UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILBER JENNINGS,<br><br>            Petitioner,<br><br>    vs.<br><br>JILL L. BROWN, Warden<br>of San Quentin State Prison,<br><br>            Respondent. | Case No. CIV. F-91-684-OWW-P<br><br>Death Penalty Case<br><br>Order Granting Respondent's<br>Second Motion to Expand the<br>Record |

This matter comes before the court pursuant to Respondent Jill L. Brown's ("the State") second motion to expand the record, filed August 18, 2003, seeking to expand the record with a declaration from Delia Frausto-Heredia, a senior criminologist with the California Department of Justice's Fresno Regional Labratory, who performed DNA analysis on samples from Petitioner Wilber Jennings ("Jennings") and victim Linda Johnson.  Ms. Frausto-Heredia declares that the DNA analysis reveals that Jennings shares the same DNA profile as found on Ms. Johnson's vaginal swab.  Jennings was granted discovery in order to oppose the State's motion on January 12, 2004.  Jennings' opposition to the State's motion was filed June 14, 2004, and the State's reply was filed September 10, 2004.

Habeas Rule 7 grants a district court the discretion to expand the record with

1  additional materials which are relevant to the petition.  Rule 7(a) of Rules Governing
2  Section 2254 Cases.  The rule is intended to help district courts "clarify the relevant
3  facts."  *Vasquez v. Hillery*, 474 U.S. 254, 258 (1986).  The court may order the record
4  expanded either in place of, or in addition to, holding an evidentiary hearing.  *See*
5  Advisory Committee Note to Habeas Rule 7; *Harris v. Nelson,* 394 U.S. 286, 300 (1969).

6  Admission of scientific testimony or evidence requires the court to initially
7  determine whether scientific testimony is being offered which will assist the
8  understanding or determination of a fact in issue.  Fed. R. Evid. 104(a).  If so, it may be
9  admitted if it is based on sufficient facts or data, it is the product of reliable principals
10 and methods, and those principals and methods have been reliably applied to the facts
11 of the case.  Fed. R. Evid. 702;  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579,
12 589, 592-93 (1993) (scientific testimony or evidence must be both relevant and reliable to
13 be admitted).  The party offering the testimony must objectively demonstrate, by a
14 preponderance of the evidence, that the chosen scientific method was reliable and
15 faithfully followed.  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1318 n.11
16 (9th Cir. 1995);  *Bourjaily v. United States*, 483 U.S. 171, 176 (1987).

17 Jennings challenges the credibility of the DNA testing, under the requirements
18 for admission of scientific evidence from *Daubert*, and Fed. R. Evid. 702 and 703, that the
19 evidence must be both relevant and reliable.  Jennings argues the State has failed to
20 meet its burden since the evidence presented is based on insufficient data and the
21 testing was done by unreliable methods and principals.  Jennings argues that the
22 proposed DNA evidence is inadmissible because the vaginal swab tested was
23 compromised long ago due to packaging of the swab with a leaking blood sample from
24 Jennings, or due to cross-contamination during handling.  Jennings' expert asserts that
25 blood dust can seep through small cracks in envelopes and spread, and that small
26 amounts of contaminates can cause a false positive match due to the extreme sensitivity

1  of current DNA testing methods.

2  Jennings' expert also points to the way in which the testing was done as
3  compromising the integrity and validity of the results.  The swab and Jennings' blood
4  sample were both examined on the same day, with no notation as to which occurred
5  first.  Also, the tests to determine the quantity of DNA were done the same day, and
6  Jennings' blood sample was handled before the swab, which is against recommended
7  procedures and the DOJ's own policies.  Since there is no sample left to retest, Jennings
8  contends the DNA evidence must be excluded.

9  Jennings points to evidence in the DOJ's notes which indicate the swab was
10 contaminated and improperly handled prior to its arrival at the DOJ in November, 2002.
11 Examinations of the swab in 1984 and 1985 revealed no evidence of sperm or sperm
12 fragments, and indicated that some of the evidence had been improperly handled.  *See*
13 Petitioner's Exs. K, B, and C.  Jennings' expert opines that the swab was either badly
14 degraded or mishandled so the sample is compromised, or that the swab was switched
15 with a penile swab taken from Jennings.  Petitioner's Ex. A (noting that the DOJ testing
16 did not reveal epithelial cells in the vaginal swab, but that those cells are found in high
17 concentrations in vaginal secretions).

18 Jennings concludes that because the proposed test results are neither valid nor
19 reliable, the evidence is not probative or relevant.  Jennings asserts the State's second
20 motion to expand the record should be denied, or alternatively, that an evidentiary
21 hearing be held to determine the reliability of the DNA evidence.

22 The State filed a reply to Jennings' opposition September 10, 2004.  The State
23 asserts they have met the requirements of *Daubert* and that the testing was performed
24 according to established methods and principals.  The State contends the DNA evidence
25 meets the standards for admissibility under Fed. R. Evid. 702 because reliable
26 procedures were faithfully applied to an uncontaminated sample which yielded reliable

results.

The State argues the vaginal swab, although degraded, was not contaminated, so the DNA test results are reliable. The State asserts the chain of custody evidence shows that the tested swab belonged to the victim Linda Johnson. *See* Respondent's Exs. D and C. The State asserts improper handling caused degradation of the swab, which explained the inability to confirm the presence of semen on the swab, but did not compromise the DNA test results. *See* Respondent's Exs. A and B. Ms. Frausto-Heredia explains the degradation and the passage of time resulted in the lack of epithelial cells, as well as the prior failure to determine the presence of semen, since neither are as robust or stable as sperm cells. Respondent's Ex. A, ¶ 20.

The State contends there is no evidence the swab was contaminated by other evidence. There was no evidence of leakage from Jennings' blood sample on either the packaging of Jennings' sample or on the envelope containing the tube with the vaginal swab. *See* Respondent's Ex. A, ¶ 21. Ms. Frausto-Heredia details the steps taken during the DNA testing, specifically addressing Jennings' objections based on cross-contamination. *See* Respondent's Ex. A, ¶¶ 8-19, 21, 24-26, 29. The State concludes that no contamination occurred and that sufficient controls were implemented to detect any contamination.

The State contends Ms. Frausto-Heredia faithfully followed proper testing procedures, so the DNA test results are reliable. Ms. Frausto-Heredia explains that per her practice, the swab was opened before the blood sample, the extractions were performed at different times, and the bench paper and gloves were exchanged between the samples, as well as the utensils disposed of or disinfected and flamed. Ms. Frausto-Heredia also asserts that no contamination was revealed on the blanks and controls which were used. Respondent's Ex. A, ¶ 24.

The State asserts that although no vaginal swab, extract from the swab, or

1 amplified extract remains to be retested, other sources of DNA are available for
2 retesting.  The State argues Jennings' theories explaining how his DNA could have been
3 detected on the vaginal swab are not valid.  There is no evidence that a penile swab was
4 ever taken from Jennings in this case.  Respondent's Ex. A, ¶ 30.  The genetic profile was
5 obtained from sperm cells which were observed microscopically and could not have
6 come from blood dust.  *Id.* at ¶ 31.  There is no evidence the vaginal swab was
7 contaminated by contact with another victim's sample.  *Id.* at ¶ 32.  Finally, improper
8 handling and/or storage degrades a sample, which produces no results, but cannot
9 create DNA on a swab.  *Id.* at ¶ 33.

10 The State concludes an evidentiary hearing is not necessary as the reliability of
11 the DNA evidence is established.  The State requests that Jennings' request for an
12 evidentiary hearing be denied, and the motion to expand the record granted.

13 Jennings was convicted of the first degree murders of Linda Johnson, Olga
14 Cannon, and Jacqueline Fraizer, and the second degree murder of Karen Robinson.  He
15 was also convicted of numerous felonies against those and three other victims,
16 including forcible sexual assaults, robberies, arsons, and kidnapping for robbery.  The
17 jury sustained eight special circumstance allegations: that Johnson, Cannon, and Frazier
18 were killed in the course of a robbery, that Johnson and Cannon were killed in the
19 course of a rape, and three findings of multiple murder.  The California Supreme Court
20 vacated two multiple-murder special circumstances and otherwise affirmed the guilt
21 and penalty judgments.  *People v. Jennings*, 53 Cal. 3d 334 (1991).

22 Jennings claims there is insufficient evidence to show he committed all four
23 murders, and that trial counsel was ineffective for failing to investigate and present
24 available exculpatory evidence.  The State's DNA evidence is relevant to refuting this
25 claim.  However, it has not yet been determined whether Jennings' claim of factual
26 innocence presents a right to relief on habeas.

1      The State's motion to expand the record is GRANTED.  Resolution of the reliability of the DNA evidence is deferred until after Jennings' motion for an evidentiary hearing is decided.

IT IS SO ORDERED.

**Dated:   May 5, 2005**                  **/s/ Oliver W. Wanger**
b64h1h                                          UNITED STATES DISTRICT JUDGE